[S.F. No. 24709. July 11, 1985.]

ANTONIO R. SANCHEZ-COREA et al.,
Plaintiffs, Cross-defendants and Appellants, v.
BANK OF AMERICA, Defendant, Cross-complainant and Respondent;
VIRGIL McGOWEN, Defendant and Respondent.

894

## Counsel

Daniel M. Crawford, Donald T. Ramsey and Carroll, Burdick & McDonough for Plaintiffs, Cross-defendants and Appellants.

David B. Flinn and Leland, Parachini, Steinberg, Flinn, Matzger & Melnick for Defendant, Cross-complainant and Respondent.

No appearance for Defendant and Respondent.

## Opinion

**REYNOSO, J.**—Plaintiffs Antonio and Lucille Sanchez-Corea and Edward Towers, trustee in bankruptcy, appeal from an order that vacated a $2.1 million judgment in their favor and granted defendant Bank of America's motion for new trial. We initially address the following question: Where the trial court fails to comply with the mandatory statutory requirement (Code Civ. Proc., § 657) that a new trial order state grounds therefor, can such noncompliance—where it is the result of judicial and not clerical error—be cured nunc pro tunc? Our conclusion is that it may not. We next inquire whether the defective order is void. Our determination is that the order is not void. Though noncompliance with the statute precludes our upholding the order on the basis of insufficiency of the evidence or excessiveness or inadequacy of damages, we may consider its validity on any other statutory ground for new trial advanced in defendant's motion and supported by the record. After reviewing the record, however, we conclude that there is no ground on which to affirm the order, which therefore must be reversed.

### I

This case arises from a dispute over a commercial bank account maintained by the Sanchez-Coreas with the defendant Bank of America (Bank). In 1964, Antonio Sanchez-Corea formed Cormac in partnership with a third person, not a party here, who sold his interest in Cormac to Mr. Sanchez-Corea in 1971. Cormac was engaged in designing and installing electronic communications systems. From its inception, Cormac banked with defend-

ant Bank. Between 1965 and 1973 defendant Virgil McGowen, a Bank vice president and branch manager, handled Cormac's commercial account. He arranged, without the knowledge of the Bank, for Bank funds to be used to cover overdrafts on the Cormac account. At the heart of this controversy is a disagreement over the amount of money owed by Cormac to the Bank as a result of these "loans."

An embezzlement scheme was discovered by the Bank and suspicion later focused on McGowen. The Bank audited McGowen's records and discovered that he had embezzled funds from the Bank, including $246,000 which the Bank alleges was credited to Cormac's account. Prior to discovering the McGowen embezzlement scheme, the Bank had loaned Cormac $70,000. However, upon discovery of the alleged $246,000 debt, the Bank demanded payment and refused to extend further commercial credit to Cormac.

In 1972, Cormac had begun to move into the new and growing life safety systems field and in 1974, Cormac made loan arrangements for further development and growth in this area. Equity Financing of Chicago agreed to invest $150,000 in Cormac in exchange for a 20 percent stock interest. The plan was contingent upon the reduction of the Bank's claim to $180,000 payable over 10 years and upon a $100,000 loan from the Small Business Administration. The Bank would not agree to the reduction and informed the Small Business Administration that the Sanchez-Coreas might be charged with receiving stolen property. The deal with Equity Financing of Chicago was never completed.

In April 1974, Cormac filed for proceedings under chapter 11 of the Bankruptcy Act. The company went out of business in October 1974.

The Sanchez-Coreas and the trustee in bankruptcy (hereinafter the Sanchez-Coreas) sued the Bank and McGowen for breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, disparagement of credit, interference with prospective economic advantage, promissory estoppel, negligence, and intentional infliction of emotional distress. The Sanchez-Coreas requested both general and punitive damages.

The Bank answered, denying the allegations, and filed a cross-complaint for recovery of both the $246,000 allegedly credited to the Cormac account by McGowen and the $70,000 debt from the final loan admittedly received by the Sanchez-Coreas.

After a three-week trial the jury returned a verdict awarding the Sanchez-Coreas $2,100,015.50 on the complaint, consisting (as explained in answers to special interrogatories (Code Civ. Proc., § 625)) of $1 million for general

damages, $100,000 for emotional distress, $1 million for punitive damages against the Bank and $15.50 in punitive damages against McGowen. The jury awarded the Bank, on its cross-complaint, only the $70,000 loaned to Cormac, and made no award to the Bank on the $246,000 alleged debt. Judgment was entered on September 25, 1979. On September 28 notice of entry of judgment was mailed to the parties.

The Bank timely moved for a new trial, asserting the following six grounds: (1) irregularity in the proceedings of the jury which prevented the defendant from having a fair trial; (2) misconduct of the jury; (3) excessive damages; (4) insufficiency of the evidence; (5) that the verdict was against law and (6) error in law to which defendant excepted during trial.

On November 27, 1979—exactly 60 days after notice of entry of judgment was mailed—the trial court granted the Bank's motion for new trial. The minute order entered by the clerk stated: "Defendants [sic] motion for new trial is granted. Specifications to follow." No grounds for the new trial order were specified at that time. Neither party asserts that this omission was the result of clerical error. On December 4, 1979, the trial court filed an "Order Granting New Trial" vacating the judgment and granting the Bank's motion. This second order explained that the sole ground for granting the motion was insufficiency of the evidence.

The Sanchez-Coreas appeal. They contend that (1) the November 27 order was defective (but not void) for failure to state the ground (insufficiency of the evidence) on which the motion was granted (Code Civ. Proc., § 657) and (2) that the December 4 order was invalid because it was made after expiration of the 60-day period in which the court had jurisdiction to rule on the motion (Code Civ. Proc., § 660).[1] Because, they argue, the new trial order cannot be affirmed on any ground, the order should be reversed and the judgment should be reinstated.[2] The Bank of America contends not only that the order is valid and enforceable, but also that it should be interpreted to include a new trial on all issues raised in the cross-complaint. The Bank has not filed a cross-appeal as provided in California Rules of Court, rule 3(c).

As will appear below, we agree with plaintiffs.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] In their briefs to the Court of Appeal, the Sanchez-Coreas argued that the defects in the orders rendered them void. However, in oral argument the Sanchez-Coreas' counsel conceded that the November 27 order was only defective, not void, and that though the defects precluded affirmance of the order on the ground of insufficiency of the evidence (the ground specified in the December 4 order), they did not preclude affirmance on any of the other grounds stated in the Bank's motion for new trial.

## II

This case is governed by sections 657 and 660, which impose limitations and requirements on consideration of motions for new trials. ▮ The power of the trial court to grant a new trial may be exercised only by following the statutory procedure and is conditioned upon the timely filing of a motion for new trial, the court being without power to order a new trial *sua sponte.* (*Smith* v. *Superior Court* (1976) 64 Cal.App.3d 434, 436 [134 Cal.Rptr. 531]; *Healy Tibbits Constr. Co.* v. *Employers' Surplus Lines Ins. Co.* (1977) 72 Cal.App.3d 741, 754 [140 Cal.Rptr. 375, 97 A.L.R.3d 1258].)

After the court is presented with a motion for a new trial, its power to rule on the motion expires at the end of the 60-day period provided by section 660. The period runs from the mailing of notice of entry of judgment by the clerk or the service of notice of entry of judgment, whichever is earlier, or if no such notice is given, from initial notice of intent to move for new trial. (§ 660.) If no determination is made within the 60-day period, the motion is deemed to have been denied. (*Id.*)

If the motion for new trial is granted, additional requirements are imposed by statute. In pertinent part, section 657 provides that whenever the motion is granted "the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial . . . ." The section goes on, however, to distinguish between grounds and reasons. While the order passing upon and determining the motion "*must* state the ground or grounds relied upon by the court," the order "*may* contain the specification of reasons." (Italics added.) If the order stating the grounds does not also specify the reasons for the new trial, then "the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk." Thus, under section 657, the grounds for the new trial must be stated in the order. The reasons may also be stated in the order, but the trial court has the option of filing a statement of the reasons at a later time.

Section 657 also specifies guidelines for appellate review. It provides that an order granting a new trial "shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons . . . ." One qualification to this rule is that the appellate court cannot affirm on the grounds of insufficiency of the evidence or of excessive or inadequate damages unless such ground was specified in the trial court's order. (§ 657.)

In the case at bench, the trial court stated both the grounds and the reasons only in its second order. The Sanchez-Coreas contend that the trial court's

attempt to grant the Bank's motion for a new trial was defective for failure to comply with section 657, in that the initial order did not state any grounds relied upon by the court. They concede that this order, signed by the judge and filed on the 60th day after notice of entry of the judgment, complied with the jurisdictional time limit imposed by section 660. They argue, however, that the second order, filed seven days later, which for the first time stated that insufficiency of the evidence was the ground for granting the motion, was an act in excess of jurisdiction and cannot be considered by this court. Finally, they contend that this court is precluded by section 657 from affirming the new trial order on grounds of insufficient evidence or excessive damages and that on review this court can only affirm if the record supports any of the other four grounds stated in the Bank's motion for new trial. We agree.

■ The absence of any specification of grounds in the first order made it defective but not void under section 657. In *People* ex rel. *Dept. Pub. Wks.* v. *Hunt* (1969) 2 Cal.App.3d 158 [82 Cal.Rptr. 546], the Court of Appeal, noting that the trial court had failed to specify grounds as required by section 657, stated that "[w]here no grounds or reasons are specified in the order the burden is on the movant to advance any grounds upon which the order should be affirmed, and a record and argument to support it." (*Id.*, at p. 162.) Similarly, in *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713 [146 Cal.Rptr. 675] the husband argued that an order granting the wife's motion for new trial without specification of either grounds or reasons was void for failure to comply with section 657. The Court of Appeal acknowledged that "the trial judge is admonished to state his grounds and reasons, whatever they are, and this is not limited to the [insufficient] evidence and [excessive or inadequate] damages grounds. But if the text of the order made does not fulfill the statutory requirements, then the reviewing court, according to other provisions of [section 657], *must affirm the order* if it should have been granted on some *other* ground stated in the motion." (*Id.*, at p. 727, second italics added.)

Our conclusion that the order is defective but not void is also supported by closely analogous decisions of this court. In *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315] (opn. by Mosk, J.), this court considered the effect of a new trial order which stated only that " 'The motion for a new trial is granted. The court is of the definite opinion, after analyzing the evidence in this case, that there has been a definite miscarriage of justice. The court is of the opinion that the jury trying this case should have rendered a verdict for the plaintiffs, and against the defendants.' " (*Id.*, at p. 108.) Although cautioning that "we are not to be construed as giving our approval to this or any other failure to comply unambiguously with the statutory mandate that 'the court shall specify the ground' on which the

motion is granted," this court construed the order as specifying the ground of insufficiency of the evidence. (*Id.,* at p. 111.)

However, we went on to reverse the order for failure to specify reasons as required by statute, rejecting the argument that the order was void. The opinion notes that "an order granting a new trial is in excess of jurisdiction and void if, for example, it is made in a proceeding in which the remedy of new trial is not available [citation], or on a ground not prescribed by statute [citations], or upon a notice of intention that is filed prematurely [citations], or too late [citation] or is not served on an adverse party [citation], or if the court purports to grant the motion after expiration of the statutory time for ruling [citation.]" (*Id.,* at p. 118.)

In *Mercer* as in the case at bench, no such jurisdictional defect existed. The order was not void, rather the trial court "simply did not specify the reasons for which it granted the new trial. . . ." (*Ibid.*) Thus, the order was reversed not because it was void, but because "the record does not support the order." (*Id.,* at p. 119.)

In *Treber* v. *Superior Court* (1968) 68 Cal.2d 128 [65 Cal.Rptr. 330, 436 P.2d 330], this court considered the effect of a new trial order which stated the ground relied upon was "errors in law" but which failed to state reasons for the determination. Writing for a unanimous court, Justice Mosk noted that the motion was timely filed pursuant to section 660 and again rejected the argument that the order was void, stating that "although the [trial] court did not specify the reasons for the ruling, it was timely made upon a proper motion served on the adverse parties. As we explained in *Mercer,* such an order is not in excess of jurisdiction." (*Id.,* at p. 133.) Because section 657 requires the appellate court to affirm the order upon any ground stated in the motion, whether or not specified in the order, "[i]t follows that a failure of the trial judge to specify *any* ground—and *a fortiori* any reason for a ground actually stated—cannot be held to render the order void from its inception." (*Id.,* at p. 134, italics in original.)

We conclude that the initial order of November 27, 1979, was defective, but not void and turn to the trial court's second order, which was filed on December 4, 67 days after notice of entry of judgment, and specified both the ground (insufficient evidence) and reasons for the new trial. The Bank contends that the initial order's failure to state the grounds for the new trial, was cured by the second timely filed order, because the latter order was and stated the ground and reasons relied upon by the trial court. For timeliness, the Bank relies on language in section 657 which states that where "an order granting [a new trial] motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file

such specification of reasons in writing with the clerk." (Code Civ. Proc., § 657.) Additionally, it argues that the trial court's orders in this case are permitted by section 660, which provides: "The entry of a new trial order in the permanent minutes of the court shall constitute a determination of the motion even though such minute order as entered expressly directs that a written order be prepared, signed and filed."[3]

Section 657 clearly distinguishes between grounds and reasons. If the motion for new trial is granted the order "must state the ground or grounds relied upon by the court" and "may contain the specification of reasons." If the initial order does not contain the specification of reasons, then the court must prepare, sign and file such specification within 10 days. There is no indication in section 657 that any grounds for ordering a new trial may be initially set forth by the trial court during that 10-day period.

The Bank's position ignores "the separate and distinct meaning of the word 'reason'" as used in section 657. (*Mercer* v. *Perez, supra,* 68 Cal.2d 104, at p. 112.) The statute clearly allows only grounds to be stated in the initial order, and only reasons to be stated within 10 days thereafter. We reject the construction proposed by the Bank because it vitiates the distinction between grounds and reasons and is contrary to the duty of this court "not to insert what has been omitted, or to omit what has been inserted" in a statute. (§ 1858.)[4]

---

[3] The Bank's reliance on this language is misplaced. The Law Revision Commission recommendation that advocated the addition of this language to section 660 indicates that the purpose was to clarify what must be done by the end of the 60th day in order to prevent denial of the motion by operation of law. Nothing in that report indicates that the quoted language was added to permit the trial court to state grounds for the new trial at a later date. (Recommendation Relating to the Effective Date of an Order Ruling on a Motion for New Trial (Feb. 1957) 1 Cal. Law Revision Com. Rep. (1957) pp. K9-K27.)

[4] The dissent's position, that a court which orders a new trial has 10 days to state both grounds and reasons, conflicts with the wording of the statute as written by the Legislature. In the face of that wording we are compelled to disagree with the suggestion that the ground or grounds can be stated 10 days after the trial court has granted the motion. As quoted by the dissent, Witkin states that after the 1965 amendment "the 10-day limit would seem to be still applicable to the ground as well as the reasons." (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 71, p. 3646.) This suggestion, as well as the position taken in the dissenting opinion, is inconsistent with section 657's mandate that the order granting the new trial "must state the ground or grounds relied upon by the court."

Further, the sentence quoted by the dissent from *Mercer* v. *Perez, supra,* 68 Cal.2d 104, (*post,* p. 911) does not support the proposition that the 1965 amendment permits the trial court to state grounds 10 days after the motion is granted. In fact, the context of the passage indicates its purpose was to contrast between defective orders and void orders. Thus, in reference to an order in which the trial totally fails to specify grounds or reasons, *Mercer* states: "By *omitting to act* in that connection a court does not render its new trial order void, it merely restricts the scope of appellate review to the other grounds, if any, listed in the motion; but a purported specification of grounds or reasons made after the 10-day statute

The Bank relies on *La Manna* v. *Stewart* (1975) 13 Cal.3d 413 [118 Cal.Rptr. 761, 530 P.2d 1073]. There, the trial court granted plaintiff's motion for new trial but did not state the ground for the motion and failed to file a timely specification of reasons. Writing for the court, Justice Mosk stated that "We reluctantly hold the [error in failing to state the ground] to be cured by the fact that the motion for new trial was predicated solely on alleged insufficiency of the evidence; inasmuch as a new trial can be granted only on a ground specified in the motion, the order in the case at bar must be deemed to have been based on a finding of such insufficiency." (*Id.*, at p. 418.)

The limited cure for failure to state grounds recognized in *La Manna* is inapplicable here. In *La Manna* the motion for new trial was made solely on one ground—insufficiency of the evidence. Here, the Bank alleged six grounds for a new trial and there is no way for this court to infer which ground or grounds were relied on in the initial order granting the new trial. Reliance on the second order stating the ground of insufficient evidence would conflict with the statutory requirement that the initial order state the ground or grounds, subject only to the trial court's power to make a specification of reasons—but not a statement of ground or grounds—at a later date.

The Bank's position may be viewed as a substantial compliance argument, similar to that which we expressly rejected in *La Manna*. In that case, the trial court timely issued only an oral specification of reasons, whereas section 657 requires that the specification be in writing. Because that statutory directive—like the statutory mandate involved in the instant matter—was clear, we held that an oral specification of reasons "no matter how thoroughly it may have been prepared, cannot amount to compliance in any degree, 'substantial' or otherwise, with a statutory directive that such a statement be in writing." (13 Cal.3d at p. 423.)

To the extent the second order, entitled by the trial court "Order Granting New Trial," purports to rule on the motion and state insufficient evidence as the ground therefor, it is defective as in excess of the 60-day jurisdictional period. (*Siegal* v. *Superior Court* (1968) 68 Cal.2d 97, 101 [65 Cal.Rptr. 311, 436 P.2d 311].) The order ruling on the motion must be entered within the 60-day period (§ 660) and must itself state the ground for granting a new trial. (§ 657.) The trial court's second order, stating the ground of insufficiency of evidence was not filed until the 67th day. As

---

of limitations has run is an *act* in excess of jurisdiction." (68 Cal.2d at p. 121, italics in original.) There is no indication that the *Mercer* court was addressing the effect of an attempt to specify grounds (as distinct from reasons) during the 10-day period following expiration, under section 660, of the trial court's power to rule on a motion for new trial.

Justice Mosk noted in *Siegal,* " 'If a statutory period in which a court might act is jurisdictional, it is manifest that the statute should not be defeated by the simple device of a *nunc pro tunc* order.' " (68 Cal.2d at p. 102, quoting with approval from *People* v. *Black* (1961) 55 Cal.2d 275, 277 [10 Cal.Rptr. 459, 358 P.2d 915].)

The Bank claims that the trial court's power to state the ground or grounds for a new trial within 10 days after an initial order is recognized by the following dicta in *Siegal*: "In *Malkasian* v. *Irwin* [1964] 61 Cal.2d 738 [40 Cal.Rptr. 78, 394 P.2d 822], where the order entered by the clerk in the minutes failed to state that the new trial was granted on the ground of insufficiency of the evidence, and the court, within 10 days of the entry of the order, did not correct this error, it was held that the conclusive presumption of section 657 [that the order was not based on such grounds] applied." (68 Cal.2d at pp. 102-103.) The statute interpreted in *Malkasian,* however, was former section 657, as amended in 1939 and prior to the 1965 and 1967 amendments, which stated: "When a new trial is granted, on all or part of the issues, upon the ground of the insufficiency of the evidence to sustain the verdict or decision, the order shall so specify this in writing and shall be filed with the clerk within ten days after the motion is granted." (Stats. 1939, ch. 713, p. 2234.) Thus, while the former statutory provision allowed the trial court to state grounds in an order at a later date, the present version of section 657 does not permit such late filing of a statement of the ground or grounds.

The Bank also cites *San Francisco Bay Area Rapid Transit District* v. *Fremont Meadows, Inc.* (1971) 20 Cal.App.3d 797 [97 Cal.Rptr. 898] for the proposition that the initial ruling on the new trial motion need not comply with section 657. But, there, "the formal order granting a new trial was *timely* filed on December 23, 1968." (*Id.,* at p. 801, italics added.) Ten days earlier, on December 13, the trial court had made a minute order, which read: " 'This action comes on regularly this day for hearing on defendant's motion for new trial. Oral argument [was] presented by respective counsel and said matter is submitted. The court orders that the motion for new trial will be granted unless plaintiff files an additur to the judgment within ten (10) days. Said matter is continued to December 23, 1968 for further hearing.' " (*Id.,* at p. 801.) The Court of Appeal held that "[c]ompliance [with section 657] in this initial [December 13] minute order is unnecessary." (*Ibid.*) The court also stated that "The judicial function had been performed in the sense that the determination had been made. [Citation.] This does not mean, however, that the initial order must contain all the requirements of the procedure set forth in the code sections governing the ordering of new trials. Section 660, which covers the procedure for determining the motion for new trial, contemplates that the minute order

which determines the motion 'expressly directs that a written order be prepared, signed and filed.' The written order of December 23, as prepared signed and filed, complied with all the requirements of . . . section 657." (*Id.,* at p. 802.) The court went on to explain that the reference to "additur" in the December 13 minute order was in effect a statement that the ground for ordering the new trial was inadequate damages. The statement of reasons was provided by the filed order of December 23.

Accordingly, we conclude that in the case at bench the trial court's attempt, after expiration of the 60-day period allowed by section 660, to state insufficiency of the evidence as the ground for ordering a new trial was ineffective as an act in excess of jurisdiction. Having concluded that the first order was defective in that respect, we turn to the question of appellate review.

As noted previously, section 657 requires an appellate court to affirm a new trial order if it should have been granted on any ground stated in the motion. However, an appellate court cannot affirm on grounds of insufficiency of the evidence or of inadequate or excessive damages unless such ground is stated in the new trial order. Accordingly, this court cannot affirm the present order on grounds of insufficiency of the evidence or excessive damages, and must consider whether the order should be affirmed on any of the four additional grounds advanced in the Bank's motion.[5]

If an order granting a new trial does not effectively state the ground or the reasons, the order has been reversed on appeal where there are no grounds stated in the motion other than insufficient evidence or excessive or inadequate damages. (See, e.g., *La Manna* v. *Stewart, supra,* 13 Cal.3d 413, 425; *Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 63 [107 Cal.Rptr. 45, 507 P.2d 753, 94 A.L.R.3d 1059]; *Mercer* v. *Perez, supra,* 68 Cal.2d 104, 119.) If, however, the motion states any *other* ground for a new trial, an order granting the motion will be affirmed if any such other ground legally requires a new trial. (§ 657; see *Malkasian* v. *Irwin, supra,* 61 Cal.2d 738, 745; *Treber* v. *Superior Court, supra,* 68 Cal.2d 128, 133.)

---

[5]We recognize that an element of unfairness to the successful movant is involved when an appellate court's review is circumscribed due to the error of the trial court. (See Comment, *Written Specification of Reasons for New Trial Orders* (1976) 64 Cal.L.Rev. 286.) However, as recognized by Justice Mosk in *Mercer* v. *Perez,* " 'The power of the legislature [in] specifying procedural steps for new trials is exclusive and unlimited. [Citations.] The wisdom of or necessity for certain requirements are matters for legislative and not judicial consideration and the judiciary, in its interpretation of legislative enactments may not usurp the legislative function by substituting its own ideas for those expressed by the legislature.' " (68 Cal.2d at pp. 117-118, quoting with approval from *Smith* v. *Ibos* (1937) 22 Cal.App.2d 551, 554 [71 P.2d 847].)

■ Where, as here, the trial court has failed to make a timely specification of any ground for the new trial order, the burden is on the movant to advance any grounds stated in the motion upon which the order should be affirmed, and a record and argument to support it. (*Meiner* v. *Ford Motor Co.* (1971) 17 Cal.App.3d 127, 144 [94 Cal.Rptr. 702]; *People* ex rel. *Dept. of Public Works* v. *Hunt* (1969) 2 Cal.App.3d 158 [82 Cal.Rptr. 546]; *Gaskill* v. *Pacific Hospital of Long Beach* (1969) 272 Cal.App.2d 128, 133 [77 Cal.Rptr. 373]; *Tagney* v. *Hoy* (1968) 260 Cal.App.2d 372, 377 [67 Cal.Rptr. 261].) As we shall explain, the Bank has not met this burden.

One ground stated in the Bank's motion for new trial was error in law excepted to at trial. No attempt has been made to show that the order should be affirmed on this ground.

Nor may the new trial order be affirmed on the ground that the verdict "is against law." ■ The ground is separate and distinct from the other grounds listed in section 657 and does not include any, or all, of those other separate and distinct grounds for new trial. (*Annin* v. *Belridge Oil Employees Federal Credit Union* (1953) 119 Cal.App.2d Supp. 900, 911 [260 P.2d 295]; *Tagney* v. *Hoy* (1968) 260 Cal.App.2d 372, 375 [67 Cal.Rptr. 261].) (See also 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 38, at pp. 3614-3615.) In contrast to the grounds of insufficient evidence and excessive or inadequate damages, "the phrase 'against law' does not import a situation in which the court weighs the evidence and finds a balance against the verdict, as it does in considering the ground of insufficiency of the evidence." (*Musgrove* v. *Ambrose Properties* (1978) 87 Cal.App.3d 44, 56 [150 Cal.Rptr. 722].) Because the "against law" ground is distinct from the ground of insufficiency of the evidence, a new trial order must be affirmed as against law even though that ground is not stated in the order or supported by a specification of reasons. (§ 657; *Treber* v. *Superior Court, supra,* 68 Cal.2d 128, 133; *Don* v. *Cruz* (1982) 131 Cal.App.3d 695, 705 [182 Cal.Rptr. 581].)

The jury's verdict was "against law" only if it was "unsupported by any substantial evidence, i.e., [if] the entire evidence [was] such as would justify a directed verdict against the part[ies] in whose favor the verdict [was] returned." (*Kralyevich* v. *Magrini* (1959) 172 Cal.App.2d 784, 789 [342 P.2d 903]; accord, *Berge* v. *International Harvester Co.* (1983) 142 Cal.App.3d 152, 161 [190 Cal.Rptr. 815].) "[T]he function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict." (*Estate of Lances* (1932) 216 Cal. 397, 401 [14 P.2d 768]; accord, *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376,

470 P.2d 360].) ■ Accordingly, we examine the record to determine whether the verdict for plaintiffs was, as a matter of law, unsupported by substantial evidence. In our examination we apply the well established rule of appellate review by considering the evidence in the light most favorable to the prevailing party, here the Sanchez-Coreas, and indulging in all legitimate and reasonable inferences indulged in to uphold the jury verdict if possible. (See, e.g., *Estate of Teel* (1944) 25 Cal.2d 520, 527 [154 P.2d 384]; *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

So examining the record, we conclude that the judgment entered upon the jury verdict is supported by substantial evidence. ■ The Bank correctly argues that evidence of lost profits must be unspeculative and in order to support a lost profits award the evidence must show "with reasonable certainty *both* their *occurrence* and the *extent* thereof." (*Gerwin* v. *Southeastern Cal. Assn. of Seventh Day Adventists* (1971) 14 Cal.App.3d 209, 221 [92 Cal.Rptr. 111], italics in original.)

■ The following evidence supported the $1 million compensatory damages award: Mr. Sanchez-Corea's testimony established that Cormac was not a new or unestablished business, but had been in operation for 10 years. Although the life safety systems market was a newly developing one, Mr. Sanchez-Corea and Deputy Chief Condon of the San Francisco Fire Department testified that Cormac had been involved in that business from the very beginning. The value of Cormac's early start in the business was shown not only by the evidence of their established reputation and the high regard that others had for their work but also by the tenfold growth in contracts (sales) from $180,000 in 1970 to $1.5 million in 1973. The testimony of a Small Business Administration loan officer and loan documents prepared by the Bank and the SBA all indicated that the business community viewed Cormac as a growing company with a bright future.

Jack Lapidos, who was experienced in analyzing the growth potential for small businesses, projected Cormac's future profitability as early as 1973. This projection was a three-year profit projection, and the reliability of the information and the conservative nature of these estimates was confirmed by the subsequent experience of Cormac itself and the earnings of other companies, including Honeywell, which occupied the market after Cormac's departure and previously had been competitors of Cormac. Cormac had succeeded in winning large contracts for the installation of life safety systems even when in direct competition with Honeywell. Lapidos had projected that Cormac would win $1.5 million in contracts at the end of 1974, but in fact Cormac achieved that goal in 1973. Lapidos projected profits of $750,000 and $1 million for 1974 and 1975 respectively.

The Bank contends that comparisons with the other companies' earnings is invalid because of Cormac's far smaller financial resources from capital investment or long-term loans. Lapidos, financial advisor for Cormac, testified, however, that because of the alleged debt owed to the Bank, Cormac was unable to get financing from other banks for fear that the loan proceeds might be seized by the Bank. He testified that it was the inability to obtain financing that forced Cormac into bankruptcy. Once in bankruptcy, Cormac was unable to get even small contracts and also had difficulty collecting on contracts already performed. But for the bankruptcy caused by the Bank of America, Lapidos testified, Cormac would have continued to grow and profit. Thus, there was substantial evidence that Cormac's lack of financial resources resulted from the Bank's own wrongdoing. "[T]he wrongdoer cannot complain if his own condition creates a situation in which the court must estimate rather than compute. [Citations.]" (*Guntert* v. *City of Stockton* (1976) 55 Cal.App.3d 131, 143 [126 Cal.Rptr. 690, 127 Cal.Rptr. 602].)

We conclude that the compensatory damages award was supported by substantial evidence. The cases cited by defendants do not support a contrary conclusion. The cases involve plaintiffs who sought lost profits for a copyright business that did not exist (*Read* v. *Turner* (1966) 239 Cal.App.2d 504 [48 Cal.Rptr. 919, 40 A.L.R.3d 237]), a store and hotel that never opened (*Handley* v. *Guasco* (1958) 165 Cal.App.2d 703 [332 P.2d 354]; *Gerwin* v. *Southeastern Cal. Assn. of Seventh Day Adventists* (1971) 14 Cal.App.3d 209 [92 Cal.Rptr. 111]), a motel that never opened (*Engle* v. *City of Oroville* (1965) 238 Cal.App.2d 266 [47 Cal.Rptr. 630]), a business which was only in operation a few days (*MacMorris Sales Corp.* v. *Kozak* (1968) 263 Cal.App.2d 430 [69 Cal.Rptr. 719]), a machine that had just been invented (*Cal. Pres Mfg. Co.* v. *Stafford Parking Co.* (1923) 192 Cal. 479 [221 P. 345, 32 A.L.R. 114]), and a partnership which never received a contract in its two-month history (*Patton* v. *Royal Industries Inc.* (1968) 263 Cal.App.2d 760 [70 Cal.Rptr. 44]).

■ We turn to the award of damages for emotional distress and conclude that there is substantial evidence to support the jury's determination that defendant Bank engaged in intentional or reckless conduct which it should have known would cause such distress. There is evidence from which the jury could have determined that the Bank acted outrageously in reaction to the plight in which the Sanchez-Coreas found themselves as a result of vice president McGowen's conduct. Testimony indicated that Bank officers Jones and Timerman failed to advise plaintiffs that the Bank had determined not to give Cormac any further loans. According to Sanchez-Corea, the Bank's office misrepresented to him that further financial assistance would be forth-

coming but only if plaintiffs assigned all their past, present and future accounts receivable to the Bank. A day after the plaintiffs made such an assignment, the Bank refused the further loan. There was evidence that the Bank forced the Sanchez-Coreas to execute excessive guarantees and security agreements. In addition to Cormac's pledge of over $262,000 of accounts receivable for a $70,000 note, Mrs. Sanchez-Corea executed a $50,000 guaranty for a $30,000 note, and Mr. Sanchez-Corea was directed to purchase a life insurance policy in the amount of $40,000 naming the Bank as beneficiary. Furthermore, there was extensive testimony about an incident at the San Franciscan Hotel in San Francisco. According to the testimony, Bank officials publicly ridiculed Mr. and Mrs. Sanchez-Corea, using profanities in their statements. A friend who was with the Sanchez-Coreas testified that Bank employees were pointing at the Sanchez-Coreas and the employees were laughing about the financial plight of Cormac. In response to all these instances, Mr. and Mrs. Sanchez-Corea testified as to resulting problems of alcoholism, severe headaches, insomnia, tension and anxiety.

■ Turning to the punitive damages award, we similarly conclude that the jury's determination is supported by substantial evidence. The jury could have determined that the Bank acted fraudulently in forcing the Sanchez-Coreas to assign all accounts receivable in return for financing at a time when the Bank knew Cormac was in critical need of further loans. As indicated above, although the Bank had determined not to extend further loans to Cormac, the loan officers indicated that future financing might be forthcoming only after the assignment. One day after the accounts receivable of Cormac were assigned to the Bank, the long term loan application was turned down.

Thus, we conclude that the verdict is supported by substantial evidence and that the Bank has failed to demonstrate that the verdict is against law.

The final two grounds for new trial asserted by the Bank, irregularity in the jury proceedings and misconduct of the jury, also fail to provide this court with a basis for affirming the new trial order. The Bank claims irregularity in that the same nine jurors who voted for compensatory damages did not also vote for punitive damages. This argument is without merit. ■ Counsel has waived any defect in inconsistency in the verdict by failing to request that the jury be returned for further deliberation. (*United Farm Workers of America* v. *Superior Court* (1980) 111 Cal.App.3d 1009, 1021 [169 Cal.Rptr. 94]; *Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1029 [98 Cal.Rptr. 187, 54 A.L.R.3d 250].)

■ The Bank's remaining jury contentions center around a declaration claimed to invalidate the vote of one juror, Ms. Bonnell. Though when

polled in open court, she voted for the general verdict for the Sanchez-Coreas, and specifically for compensatory damages, she subsequently declared that no jury vote was taken on the Bank's liability and she did not agree to liability, but that she voted for damages as a compromise because she thought that liability had been decided and she felt pressured by her employer to return to work. The applicable rule is explained in *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], holding that Evidence Code section 1150 "prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent. The only improper influences that may be proved under section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration." (*Id.,* at p. 350.) Ms. Bonnell's declaration dealt only with jurors' mental processes and reasons for assent or dissent and was inadmissible for purposes of undermining the verdict. (See *Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1028-1031 [98 Cal.Rptr. 187, 54 A.L.R.3d 250]; *Continental Dairy Equip. Co.* v. *Lawrence* (1971) 17 Cal.App.3d 378, 385-387 [94 Cal.Rptr. 887].)

The Bank asserted no other grounds for the motion for new trial. We conclude that there is no basis for this court to affirm the new trial order.

### III

Because we conclude that the new trial order cannot be affirmed on appeal, it is unnecessary to decide whether the order should have included defendant's cross-complaint.

In summary, we hold that the first order granting the new trial is defective but not void. We further hold that this court is precluded from affirming the order on grounds of either insufficiency of the evidence or excessive damages. Although the second order of the trial court specifies the ground of insufficiency of evidence, that order is invalid because it was filed after the 60-day jurisdictional period prescribed by section 660. Looking to the remaining grounds for the new trial stated in defendant's motion, we conclude that they do not warrant affirming the trial court's order. Accordingly, the order vacating the judgment for plaintiffs and granting a new trial is reversed. Because defendant has failed to file a protective cross-appeal, reinstatement of the judgment will automatically be final. (*Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 63 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059].)

Bird, C. J., Mosk, J., Broussard, J., Grodin, J., and Anderson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.

KAUS, J.—I respectfully dissent. Just when the bench and bar of this state thought that all the dangers in the procedural minefield created by section 657 of the Code of Civil Procedure had been identified and charted, the court unnecessarily adds a new one.

The court concedes that the order of November 27 was not void. In the face of *La Manna* v. *Stewart* (1975) 13 Cal.3d 413 [118 Cal.Rptr. 761, 530 P.2d 1073] it could hardly do otherwise: there the order contained no statement of the ground on which the motion was granted. Nevertheless we held it sufficient, since the motion had been made on only one ground—insufficiency of the evidence. Here, of course, the motion was made on several grounds and as of November 27 it was impossible to know which had appealed to the court. This hardly mattered, however: as to all grounds except insufficiency and excessive damages, the correctness of the order was subject to appellate review in spite of the failure to specify the ground in the November 27 order. (*Treber* v. *Superior Court* (1968) 68 Cal.2d 128, 133-134 [65 Cal.Rptr. 330, 436 P.2d 330]; *Malkasian* v. *Irwin* (1964) 61 Cal.2d 738, 745 [40 Cal.Rptr. 78, 394 P.2d 822].) As to insufficiency and excessive damages, the court had 10 days in which to file its reasons. If the trial court's failure to provide a statement of grounds is not fatal with respect to all other grounds, it should not be so with respect to insufficiency and damages, as long as the order granting the motion is followed up by a statement of reasons within the 10-day period provided by section 657.

As a matter of fact, Mr. Witkin—after reviewing the evolution of the current statutory language—seems to suggest that the Legislature intended the 10-day extension to apply to the statement of the ground of insufficiency as well as to the statement of reasons to support that ground. He states: "It would seem impossible . . . to state reasons for granting the new trial on a particular ground without indicating the ground itself; hence the 10-day limit would seem to be still applicable to the ground as well as the reasons." (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 71, p. 3646.) A dictum in *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 121 [65 Cal.Rptr. 315, 436 P.2d 315] supports Mr. Witkin. There we said that "purported specification of *grounds* or reasons *after the 10-day statute of limitations has run* is an act in excess of jurisdiction, and therefore void to that extent." (Italics added.) (See also *Fry* v. *Young* (1968) 267 Cal.App.2d 340, 347 [73 Cal.Rptr. 62].)

In the leading decisions in this area, *Treber* v. *Superior Court, supra,* 68 Cal.2d at pages 131-134, and *Mercer* v. *Perez, supra,* 68 Cal.2d at pages 112-116, this court explained carefully and persuasively why, on the one hand, the new trial order must be affirmed—in spite of a total failure to specify grounds or reasons—if justified on any ground stated in the motion

except insufficiency of the evidence or excessive or inadequate damages, while, on the other hand, the statute insists that an order based on insufficiency of the evidence or excessive or inadequate damages be supported by an adequate, timely specification of reasons.[1] I respectfully challenge the majority to advance an equally principled reason explaining why a new trial order, made within the time limit of section 660 and supported by a timely, adequate statement of reasons should be of no effect.

---

[1]In *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 725-726 [146 Cal.Rptr. 675] the court explained that this apparent seesawing between super-liberality and super-strictness "requires a realization that the Legislature in drafting section 657 had at least two different objectives in mind. Generally, one objective is to facilitate a meaningful appellate review of orders granting new trials primarily where the ground is either that the evidence is insufficient to justify the verdict or that the damages are excessive or inadequate. The second objective, assuming the given order is defective with reference to the first objective, is to prevent injustice by extending the scope of appellate review to any ground listed in the motion and not relied upon by the trial court." (Italics omitted.)