Filed 2/16/24  Guzman v. Younan CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JORGE GUZMAN, JR., <br><br>　　Plaintiff and Respondent, <br><br>　　v. <br><br>EDWARD YOUNAN et al., <br><br>　　Defendants and Appellants. <br><br>———————————————————— <br><br>JORGE GUZMAN, JR., <br><br>　　Plaintiff and Appellant, <br><br>　　v. <br><br>EDWARD YOUNAN et al., <br><br>　　Defendants and Respondents. | B317573 <br><br>(Los Angeles County <br>Super. Ct. No. BC562564) |

APPEALS from orders and a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge. Order denying judgment notwithstanding the verdict reversed. Appeal from order granting new trial dismissed as moot.

John L. Dodd & Associates, John L. Dodd; Law Office of Ilia Serpik, and Andrei V. Serpik for Edward Younan and Avalon Foods, Inc.

Abir Cohen Treyzon Salo, Boris Treyzon, Douglas Rochen; Esner, Chang & Boyer, Holly N. Boyer, Shea S. Murphy, and Kevin K. Nguyen for Jorge Guzman, Jr.

---

## INTRODUCTION

Jorge Guzman, Jr. (Guzman) drove a food truck owned and operated by Philma Alvarez (Philma) and Hector Chavez (Chavez).[1] On January 11, 2014, after the truck completed its business at one of its stops, the cook on the truck asked Guzman to retrieve a table from outside. When Guzman stepped outside, a car hit him, resulting in serious injuries.

Guzman sued Philma, Chavez, Avalon Foods, Inc. (the commissary where Philma stored her food truck) and Edward Younan (Avalon's president) for damages caused by the accident.[2] Guzman brought the lawsuit under Labor Code section 3706, which permits an injured employee to file a civil complaint for damages against an employer who "fails to secure the payment of compensation" to the injured employee.

The case was tried in two phases: the first phase determined whether Avalon and/or Younan were Guzman's employers at the time of the accident – a necessary element of

---

1 Because another witness in this case also has the surname "Alvarez," we refer to Philma by her first name to avoid confusion.

2 Philma and Chavez defaulted and are not parties to this appeal.

2

Guzman's claim under Labor Code section 3706. After a jury found both Avalon and Younan were Guzman's employers when he was injured, the trial proceeded to the second phase to determine other elements of liability and damages. A second jury found in favor of Guzman, and the trial court entered judgment against Avalon and Younan.

Avalon and Younan moved for a new trial and judgment notwithstanding the verdict (JNOV) on several grounds. The trial court denied their JNOV motion, but granted a new trial based on instructional error concerning apportionment of responsibility for non-economic damages in phase two of the trial.

Avalon and Younan appeal from the trial court's order denying their JNOV motion, and cross-appeal from the judgment. They contend: (1) there was no substantial evidence Guzman was employed by Avalon and/or Younan at the time of the accident; (2) in phase two of the trial, Avalon and Younan rebutted the statutory presumption of negligence as a matter of law; (3) the judgment in both phases is unsupported by substantial evidence; (4) the trial court committed instructional error in phase one of the trial; and (5) the trial court erred in omitting Chavez and Philma from the special verdict form in phase one. Guzman appeals from the order granting a new trial. Guzman also filed a protective cross-appeal from the judgment.

For the reasons discussed below, we agree with Avalon and Younan's first contention. Accordingly, we reverse the order denying Avalon and Younan's JNOV motion, and direct the trial court to enter judgment in favor of Avalon and Younan. This conclusion renders moot Guzman's cross-appeal from the order granting Avalon and Younan's motion for a new trial.

3

## FACTUAL AND PROCEDURAL BACKGROUND

We limit our recitation of the facts to those necessary to provide context for and resolve the issues we are deciding on appeal.

Younan began working in the food truck business in 1975 as a driver. He and his wife eventually owned between 50 and 60 trucks. Younan acquired Avalon, a food truck commissary, in 1999. Food trucks are required to park at a "certified commissary," such as Avalon, and Avalon charges its customers for "housing space" (i.e., a parking spot), electricity, security, and ice. At the time of trial, Avalon owned only "maybe a couple" food trucks, which were not usually on the road, but served as spares.

Guzman began working on food trucks in approximately 1992. He was the driver and cashier. His job duties included "driv[ing to] the stops where they go, sell[ing] food, . . . tak[ing] the money, get[ting] change" and "driv[ing] to the next stop." At the time of the accident, Guzman drove a food truck owned by Philma. Philma parked her trucks at Avalon during the relevant time period.

Following the accident, Guzman filed a civil complaint against Philma and Chavez. Guzman later named Avalon and Younan as defendants. The operative complaint alleged that, on January 11, 2014, while Guzman was employed by "defendants," "[t]he employee manager negligently instructed [Guzman] to retrieve a serving table in a manner that subjected [Guzman] to extreme danger of, and resulted in, [Guzman] being struck by a

4

car and severely injured."[3] Avalon and Younan answered the complaint, and, as relevant here, asserted no employment relationship existed between them and Guzman.

The trial court granted Avalon and Younan's motion to bifurcate trial into two phases, with the issue of whether Guzman was employed by Avalon and/or Younan at the time of the accident tried first, reserving other issues of liability and damages to a second phase of trial, if necessary.

Phase one of trial began on October 21, 2019. At the close of plaintiff's case-in-chief, defendants orally moved for nonsuit. In response, the trial court stated "[t]here was some slightly . . . confusing testimony frankly at various points, enough to justify sending this to the jury" but took the motion "under advisement" and declined to decide it at that time. On October 24, 2019, the jury returned a verdict finding both Younan and Avalon were Guzman's employers at the time of the accident.

Phase two of trial began in July of 2021. A second jury found Guzman was injured in the course and scope of his employment, and Avalon and Younan did not overcome the presumption of negligence.[4] The jury awarded Guzman damages

---

3      The operative complaint also named Kevin Robledo as a defendant. During trial, the parties stipulated to dismissing Robledo with prejudice.

4      Labor Code section 3708 provides that, in an action against an employer who does not obtain workers' compensation insurance, "it is presumed that the injury to the employee was a direct result and grew out of the negligence of the employer, and the burden of proof is upon the employer, to rebut the presumption of negligence."

totaling $8,245,034.00, and the trial court entered judgment in favor of Guzman.

Following trial, Avalon and Younan moved for JNOV and a new trial. After a hearing on the motions, the trial court denied the JNOV motion, stating there was "conflicting testimony surrounding the issue of who [Guzman] was working for at the time of his injury[,]" but ultimately concluded "both juries' findings were supported by substantial evidence." The court granted a new trial however, on the ground that, in phase two of the trial, "the jury should have been instructed to allocate fault among the named defendants, including the defaulting defendants." As noted above, Avalon and Younan appealed from the order denying their JNOV motion and cross-appealed from the final judgment. Guzman appealed from the order granting a new trial, and filed a protective cross-appeal from the judgment.

## DISCUSSION

### A.    Standard of Review

We review the trial court's denial of defendants' JNOV motion to determine "'whether there is evidence in the record of sufficient substance to support [the] verdict.'" (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 906.) In so doing, we consider the evidence in the light most favorable to the prevailing party, and indulge in all legitimate and reasonable inferences to uphold the verdict. (*Id.* at p. 907.)

Although our review begins and ends with a determination that substantial evidence supports the verdict, "this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 (*Kuhn*).) Substantial evidence is not synonymous with ""any"

6

evidence.'" (*Ibid*.) Rather, to be substantial, the evidence must be credible and of solid value. (*Ibid*.) "'"[A] judgment may be supported by inference, but the inference must be a reasonable conclusion from the evidence and cannot be based upon suspicion, imagination, speculation, surmise, conjecture or guesswork. [Citation.] Thus, an inference cannot stand if it is unreasonable when viewed in light of the whole record."'" (*Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1219 (*Joaquin*).)

**B.     The Jury's Finding in Phase One is Unsupported by Substantial Evidence**

Applying the principles set forth above, we conclude substantial evidence does not support the jury's finding that Guzman was employed by Avalon or Younan at the time of the accident.

In denying Avalon and Younan's JNOV motion, the trial court recognized the "evidence points to an employment relationship with [Philma]" but the "connection to [Avalon and Younan] is less clear." It nevertheless held substantial evidence supported the jury's finding, reasoning: "The evidence reflects that there was overlap, at times, of who communicated with [Guzman] regarding when he was going to work (such as [Philma] calling him to tell him he would be driving 'for [Younan]') and the evidence does not conclusively establish how closely [defendants] and [Philma] worked with one another." The trial court, therefore, declined to "interfere with the phase one jury's findings regarding the employment relationship with [defendants] and [Guzman]." We agree with the trial court that "it was a confusing trial" based on several factors, including that the evidence on the issue of who employed Guzman was sparse (i.e., no employment records, pay stubs, accounting records, etc.).

7

As discussed more fully below, however, the record contains no evidence that Guzman was employed by Avalon or Younan on the date of the accident; rather, the evidence merely demonstrates that Guzman may have driven a truck for Avalon and Younan at some point in 2013, *before* the accident occurred.

During trial, Guzman repeatedly and unambiguously testified he worked exclusively for Philma at the time of the accident. For example, in response to defendants' counsel's question, "But you stopped – at least your testimony is you stopped working for [Younan] in 2013 and worked exclusively with Philma, is that not correct?" Guzman replied that was correct. Guzman testified that, before the accident, in 2013, he worked for Younan doing the "same thing I did with Philma. I drove a truck and . . . I was [the] cashier." Guzman worked for Younan for approximately three to five months in 2013. Then, he stopped working for Younan, worked "odd jobs" in a warehouse, and later came back to drive a food truck for Philma at the end of 2013. Defendants' counsel clarified: "And you continued to work with [Philma] from the end of 2013 through the time of your injury, correct?" Guzman responded: "Exactly."

When Guzman worked for Philma at the end of 2013 through the time of his injury in 2014, Philma told Guzman what to do and where to go. If the truck broke down, or Guzman was sick and he could not work, he called Philma. Neither Avalon nor Younan paid Guzman when he worked for Philma, and he never reported to anyone at Avalon while working for Philma. Guzman further testified that he did not wear a uniform when he worked for Philma, but when he worked for Younan he was required to wear a shirt Younan provided him.

8

Guzman relies on the following testimony in support of his position that, despite his testimony to the contrary, substantial evidence supports the jury's finding he worked for Avalon and Younan at the time of the accident: (1) In response to plaintiff's counsel's question "In 2014, or 2013 who did you work for?" Guzman responded, "It was [Philma] and [Younan]."; (2) In response to defendants' counsel's question "Who were you employed by at the time of your injury?" Guzman responded "[Philma] and I think [Younan], too."; (3) Guzman gave all the cash to the Avalon cashier at the end of his shifts; (4) Guzman was supervised by one of Younan's employees when he drove for Younan; (5) At "one time" Guzman damaged a door at Avalon, and Avalon took money out of Guzman's paycheck to pay for the damage; (6) Younan provided Guzman with a uniform to wear when he drove a truck for Avalon; (7) Avalon paid Guzman cash when he worked as a food truck driver for Younan; and (8) in 2013, Guzman thought he was going to drive a food truck for Philma, but later "found out" he was going to work for Younan.

When we view this testimony in light of the whole record, as we must, we cannot conclude it supports an inference that Guzman worked for Philma *and* Younan when the accident occurred. It is not substantial evidence that Younan employed Guzman at that time. At most, it indicates Guzman *thinks* he worked for both Philma and Younan at the critical time. But with respect to Guzman, what he thinks is irrelevant absent evidence that his belief is well founded. Although Guzman's testimony as a whole supports an inference that Avalon and/or Younan may have employed Guzman at some point in 2013, no evidence demonstrates Guzman worked for them in 2014. In other words, Guzman's testimony that he worked for Younan in "2013 or 2014"

9

and that he "thinks" he was employed by "[Younan], too" at the time of the injury is not of sufficiently "solid value" to constitute substantial evidence that Younan employed him at the time of the accident. This is especially so in light of Guzman's clear testimony that he stopped working for Younan in 2013, "and . . . went back to drive Philma's truck" until the accident occurred. (See *Kuhn, supra,* 22 Cal.App.4th at p. 1633.) Indeed, on cross-examination, defendants' counsel clarified Guzman's testimony that he worked for Philma and Younan in "2013 or 2014" as follows: "Q[:] "Okay. When you heard counsel ask you who you worked for in 2013, 2014, do you remember that question? A[:] Yeah. Q[:] Who did you work for in 2014? A[:] Philma Alvarez. Q[:] Correct. You worked on Philma's truck correct? A[:] Yeah."

In short, the issue is not whether Guzman *ever* worked for Avalon or Younan – on that point there is testimony from which a jury could find an employment relationship in 2013 between Guzman and Avalon and/or Younan. The answer to the only relevant issue here, i.e., whether substantial evidence supports the conclusion that Guzman was employed by Avalon and/or Younan at the time of the accident, is "no" based on Guzman's own, unequivocal testimony that he stopped working for them in 2013, went to work at a warehouse, and then came back later in 2013 to drive a food truck for Philma until the date of the accident. Based on Guzman's testimony, the only time Avalon and Younan exerted control over him (i.e., provided a uniform, paid him, etc.) was when he worked for them; when he worked for Philma at the end of 2013 and beginning of 2014, only Philma (and/or the cook on Philma's truck) told him where to go, what to do, and paid him. On this record, it was unreasonable for the jury to infer that Guzman worked for Avalon or Younan at the time of

10

the accident. (See *Joaquin, supra*, 202 Cal.App.4th at p. 1219 ["'[T]he trier of the facts may not indulge in the inference when that inference is rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable [people]. The trier of the facts may not believe impossibilities.'"].)

Moreover, we reject Guzman's argument that Philma, Avalon, and Younan were his joint employers because Philma purportedly worked for Younan. Guzman testified "I think [Philma] worked for [Younan]." He provides no foundation for his statement, however. Nor does he cite any other supporting testimony in the record. Guzman's speculation or surmise does not constitute substantial evidence. (See *Joaquin, supra*, 202 Cal.App.4th at p. 1219 ["'"[T]he inference must be a reasonable conclusion from the evidence and cannot be based upon suspicion, imagination, speculation, surmise, conjecture or guesswork."'"].) It does not matter that Guzman may "think" Philma worked for Younan in 2014 if there is no substantial evidence that she did.

Accordingly, we conclude the trial court erred by denying Avalon and Younan's JNOV motion. Because the trial court is directed to enter judgment in favor of Avalon and Younan based on Guzman's failure to meet his burden to prove the threshold issue (i.e., that Avalon or Younan employed him at the time of the accident), Guzman's appeal from the trial court's order granting a new trial based on allocation of damages is moot.

11

## DISPOSITION

The order denying the JNOV is reversed. The trial court is directed to enter a new judgment in favor of Avalon and Younan. Guzman's appeal from the trial court's order granting a new trial is dismissed as moot. Avalon and Younan are awarded their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, P. J.

We concur:

COLLINS, J.

ZUKIN, J.