[Civ. No. 31215. Second Dist., Div. Three. July 9. 1968.]

JAMES PATTON et al., Plaintiffs and Appellants, v. ROYAL
INDUSTRIES, INC., et al., Defendants and Respondents.

Jacque Boyle for Plaintiffs and Appellants.

Kirtland & Packard and Austin C. Smith, Jr., for Defendants and Respondents.

SHINN, J.*—The action is for libel and slander, invasion of the right of privacy, interference with the right of contract and unfair competition conspiracy. Defendants were Royal Industries, Inc., and Edward C. Reed. In a jury trial the court granted a motion of defendants for a nonsuit upon the cause of action for invasion of privacy and denied motions of both parties for directed verdicts as to the other causes of action. The jury returned a verdict in favor of all defendants on all remaining causes of action. Plaintiffs made motions for summary judgment, which motions were denied. Plaintiffs also made a motion for judgment notwithstanding the verdict and this motion also was denied. Plaintiffs' motion for a new trial was refused and they appealed from the judgment.

The appeal is on a settled statement, a clerk's transcript and exhibits.

Royal Industries, a corporation, transacted business under the name of Ideal Aerosmith. A part of the business was repair and maintenance of pressure vacuum systems and measuring devices and instruments used in aircraft missiles and spacecraft. Plaintiffs were experts in this work and worked on it at least from August 1962 to January 24, 1964. By letter of January 13, 1964, plaintiffs resigned their

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

employment as of January 24, 1964, after notifying defendants they intended to go into business for themselves.

Edward C. Reed was office manager for Ideal at Whittier; William Achor was president of Ideal, stationed at Cheyenne, Wyoming. The corporation, through Achor and Reed, composed a letter reading as follows:

"January 28, 1964

Gentlemen:

"Please be advised that Mr. James H. Patton and Mr. Richard Thrasher, who have formerly been handling our service work at our Whittier facility, have been terminated.

"These men are being replaced with personnel having more experience and knowledge in the servicing of pressure-vacuum equipment and related systems and we subsequently expect to provide you with better and more efficient service in the future.

"We wish to thank you for your past patronage and are looking forward to the opportunity to continue serving you.

"Yours very truly,
IDEAL AEROSMITH
[signed] E. C. Reed
ECR-pf" · Edward C. Reed,
General Manager"

Copies of the letter were sent to at least 72 concerns who were customers or potential customers for work of the type plaintiffs had been doing. Plaintiffs started up a business of their own and in the same line, and each invested $1,000 therein. They had the promise of two other men to invest $5,000 or more each, if the business proved successful. Plaintiffs were unable to get any work for their venture and closed it down March 15, 1964. In the meantime each plaintiff lost wages of $1,200. Six witnesses testified for plaintiffs that they had received a copy of the letter and that they understood the letter to mean that plaintiffs had been fired for some cause or provocation. There was also evidence that plaintiffs were highly skilled workmen.

Defendants' officers Reed and Achor testified to the circumstances under which the letter was prepared. The substance of their testimony was that they did not mean to state that plaintiffs had been discharged; they did not believe the letter stated plaintiffs had been discharged; they had no ill feelings toward plaintiffs; they knew plaintiffs were potential competitors and they intended only to protect their business from

that competition, and to assure their customers and potential customers that Ideal was still in business.

 Upon the cause of action for libel a primary question was whether the publication is libelous on its face. (*MacLeod* v. *Tribune Publishing Co.*, 52 Cal.2d 536, 546 [343 P.2d 36]; *Cameron* v. *Wernick*, 251 Cal.App.2d 890, 893 [60 Cal.Rptr. 102].)

The question is one of law. The test is whether in the mind of the average reader the publication, considered as a whole, could reasonably be considered as defamatory. (*Schomberg* v. *Walker*, 132 Cal. 224 [64 P. 290]; *MacLeod* v. *Tribune Publishing Co., supra*, 52 Cal.2d 536.)

The court must determine as a matter of law whether the publication is libelous per se. If it is determined that the publication is susceptible of a defamatory meaning and also of an innocent and nondefamatory meaning it is for the jury to determine which meaning would be given to it by the average reader. (*MacLeod* v. *Tribune Publishing Co., supra,* 52 Cal.2d 536; *Williams* v. *Daily Review, Inc.*, 236 Cal.App.2d 405 [46 Cal.Rptr. 135].)

When the material published is unambiguous and in the court's opinion could not reasonably be understood as nondefamatory the issue of libel should not be submitted to the jury. (*Williams* v. *Daily Review, Inc., supra*, 236 Cal.App.2d 405; *Arno* v. *Stewart*, 245 Cal.App.2d 955, 960 [54 Cal.Rptr. 392].)

 Plaintiffs requested an instruction to the effect that the court had determined that the letter constitutes libel per se, that it was published by the defendants and that the jury should find for the plaintiffs on the issues of libel and publication. The court refused the instruction and submitted to the jury the question whether the letter was libelous. This was error. Insofar as the proposed instruction purported to remove from the jury the issue of libel it was a proper one.

The contention of the defendants that the letter meant only that the plaintiffs were no longer with the company, without suggesting they had been discharged, distorts the plain meaning of the statement that the plaintiffs "have been terminated." The use of the passive voice, considered with the implication that the reason for the termination of plaintiffs was that they were to be replaced with workmen of more experience and knowledge, clearly implies that it was the decision of the defendants, and not the plaintiffs, to put an end to the employment of the plaintiffs. It would, indeed, be

an odd interpretation of the letter to read it as implying that the plaintiffs had a lofty but humiliating purpose to quit their work in which they were experienced and competent to make room for someone who could do the work better. The letter is susceptible of no interpretation other than as a statement that plaintiffs were discharged. Moreover, the implication that plaintiffs' services had not been first-class or satisfactory was a serious reflection upon their abilities and a libel as a matter of law. (*Williams* v. *Daily Review, Inc., supra,* 236 Cal.App. 2d 405.)

The jury should not have been given an opportunity to decide the libel issue.

An equally important question was whether the relationship of the parties and the conditions of the same were such as to entitle the defendants to assert the defense of privilege afforded by subdivision 3 of section 47 of the Civil Code which reads:

''A privileged publication or broadcast is one made—

''3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information.''

Plaintiffs requested an instruction reading: ''The Court has determined as a matter of law that the writing involved in this action was not privileged. This means that you must find for the plaintiffs on this issue of the case.'' The instruction was refused and the issue as to privilege was submitted under the court's instructions. This was error. As previously stated, the letter asserted falsehoods, and their falsity was known to the defendants. The deliberate publication of known false and defamatory statements cannot be excused upon the claim they were made in good faith and from innocent motives. Such abuse of the privilege destroys it. (Rest., Torts, §§ 600-601; *Russell* v. *Geis,* 251 Cal.App.2d 560 [59 Cal.Rptr. 569]; *Di Giorgio Fruit Corp.* v. *AFL-CIO,* 215 Cal.App.2d 560 [30 Cal.Rptr. 350]; *Snively* v. *Record Publishing Co.,* 185 Cal. 565 [198 P. 1].)

We give attention next to the contention of plaintiffs that they established a prima facie case of invasion of privacy and that it was error for the court to grant a nonsuit as to that cause of action. In essence, plaintiffs advance the theory that every unauthorized publication, whether true or false, concerning an individual which causes him worry, embarrass-

ment, or other mental distress is an invasion of his privacy. They say ''Prosser describes invasion of rights of privacy as a complex of several distinct kinds of invasion. *First,* intrusion on a plaintiff's seclusion or his private affairs. *Second,* public disclosure of embarrassing private facts. *Third,* publicity which places him in a false light, and *Fourth,* appropriation of a name or likeness. (Prosser, 'Privacy' 48 Cal.L.Rev. 383.) Our action is within the third category, i.e., a 'false light' case. Some courts, authorities, and Prosser himself, have raised the question as to whether or not this branch of the tort is capable of 'swallowing up and engulfing the whole law of public defamation.' Prosser concludes that while 'there has been a great deal of overlapping of defamation and the ''false light'' cases, apparently either action, or both, will very often lie.' (Prosser, Privacy, *supra,* at page 400.)

■ '' 'It is, of course, true that the tort of invasion of the right of privacy accords protection to a fundamentally different interest than that safeguarded by the law of defamation. But each of such interests conceivably could be invaded by the same publication in a particular case.' (*Werner* v. *Times-Mirror Co.,* 193 Cal.App.2d 111 [14 Cal.Rptr. 208, 214].) ''

■ Plaintiffs then refer to statements in the letter considered to be defamatory and say ''All of this conduct placed plaintiffs in a 'false light.' '' This, of course, is true, but it by no means indicates there was an invasion of the right of privacy. There is and could be no authority for the broad contention that publicity which places one in a false light is an invasion of his privacy, even though it discloses no fact whatever relative to his private life which he wishes to keep secret. Neither Prosser nor any other authority has ever said anything of the sort.

The argument of plaintiffs blandly ignores the fact that what is public is not private and what is private is not public. It does not attempt to point out any statement in the letter which intrudes into the private lives of the plaintiffs, and we find none. It was not a secret that plaintiffs had left the employ of Ideal; it was a fact which plaintiffs desired to have known to possible customers as broadly as possible. The letter stated that plaintiffs had been discharged; this was a falsehood and a libel, but it was not the disclosure of any secret of plaintiffs. The letter reflected upon the skill and abilities of plaintiffs, and was defamatory, but this did not disclose any fact about the plaintiffs which they hoped to keep secret. There was absent a statement of a fact relative to their

private lives or any other secret matter, and although the statements were defamatory they reflected exclusively upon the professional standing of the plaintiffs in the public view. There was no invasion of the rights of privacy.

At the request of the defendants the court stated there could be no recovery in plaintiffs' cause of action for unfair competition without evidence there was a reasonable probability that plaintiffs would have obtained profit in their new business, save for the conduct of defendants. The instruction is assigned as error. We do not find error.

There can be no doubt that when a man leaves his employment to go into direct competition with the business he has left, it would be unfair for the former employer to circularize potential customers of the employee with a false statement he had been discharged and implying that his services had been inadequate and unsatisfactory. The question of damage is quite another matter. One who claims to have suffered damage must prove by a preponderance of the evidence that he did, in fact, suffer a compensable loss. Although the amount of his loss may not be provable with certainty, there can be no recovery of damages if the fact that a monetary loss was sustained is left in doubt. There was no way in which the plaintiffs could prove the business they launched for themselves would have been a success if the defendants had not interfered with it. The right to recover damages cannot be left to speculation, and the prospect of the plaintiffs for success in their new venture was purely speculative and wholly without a factual basis. (*California Press Mfg. Co.* v. *Stafford Packing Co.*, 192 Cal. 479 [221 P. 345, 32 A.L.R. 114] ; *Handley* v. *Guasco*, 165 Cal.App.2d 703 [332 P.2d 354].)

The plaintiffs contend they had money invested in the business and that their capital and the worth of their labor was lost. They did not make an issue of this loss by requesting appropriate instructions and cannot now complain that it was in issue. Moreover, the business failed, and since plaintiffs were unable to prove that it would have been profitable, it follows that the loss of capital and of time spent in the business was *damnum absque injuria*.

Mr. Peck, an agent of Ideal, testified that a Mr. Zinnato had called defendant corporation and talked with Thrasher, that Thrasher had told him that Ideal was no longer in the service business, and referred him to a telephone number; he called the number and was told by someone they could do his maintenance work. Peck informed Reed and

Achor of the incident, and evidence of that fact was received for the purpose of proving the state of mind of Achor at the time the letter was written. Defendants did not call Mr. Zinnato and plaintiffs' attorney was directed by the court not to comment upon the failure of defendants to call him. The court also refused plaintiffs' instruction based upon subdivision 5 of section 1963 of the Code of Civil Procedure (now Evid. Code, §§ 412, 413), that it may be presumed that evidence wilfully suppressed would be adverse if produced. The court ruled correctly. Plaintiffs had an equal opportunity to call Mr. Zinnato as a witness. The presumption was not applicable. (*Davis* v. *Franson,* 141 Cal.App.2d 263 [296 P.2d 600]; *Gillett* v. *Gillett,* 168 Cal.App.2d 102 [335 P.2d 736].)

Error is asserted in giving defendants' instruction to the effect that interference with the right of contract is not actionable if accomplished by fair means. It is contended the instruction introduced a false issue and tended to confuse the jury. The point is not well taken. Interference with the contract rights of the plaintiffs was made an issue in the pretrial proceedings.

Complaint is made of the refusal to give plaintiffs' requested instruction with reference to the limited purpose for which certain evidence was received. The matter was covered by an instruction that was given.

Plaintiffs' requested instruction as to the right of an employee to compete with his former employer was refused. There is no showing that the matter was not covered by instructions that were given. Moreover, the right of plaintiffs to compete with Ideal was not an issue in the case.

It is contended that after the jury had deliberated for about six hours one day they were called back the morning of the second day and the court made statements which put undue pressure upon them to reach a verdict. The case was a complicated one under the court's instructions; it had been on trial for 10 days; it was submitted to the jury at 10:42 a.m.; the jury was given further oral instruction by the court at 11:45 the following morning and returned a verdict of 9 to 3 in favor of the defendants at 3:10 p.m. For quite some time the efforts of the jury to reach a verdict have been known as *deliberations,* and a meaningful word it is. The court stated, in substance, that there should be no difficulty in reaching a verdict, and although the jurors were told they should "redeliberate," the implication was that they were taking too

much time. However, we believe the verdict must be attributed to the court's written instructions and rulings, entirely apart from any possible pressure of the oral adjuration.

 Plaintiffs offered the testimony of an expert in the English language as to the meaning of the words and phrases used in the defendants' letter, especially the words "have been terminated." The court refused the offer and the ruling is assigned as error. The ruling was correct. Several witnesses who did not profess to be grammarians testified for the plaintiffs they had read the letter and understood it to mean that the plaintiffs had been discharged. We do not understand why plaintiffs considered it necessary for the testimony of these witnesses to be fortified by the opinion of the professor that the witnesses would have understood the statement in the letter to mean what they had testified they understood it to mean. The meaning the average reader would give the letter was not a question for the opinions of grammarians.

With the exceptions we have stated, the jury was properly instructed. In view of the conclusion we have reached, it is unnecessary to discuss the denial of plaintiffs' motions for a directed verdict, for summary judgment and for judgment notwithstanding the verdict, other than their motions with respect to the cause of action for unfair competition. As to that cause of action we believe there was a failure to prove any recoverable damage and that the cause of action should not be retried.

The judgment is reversed for retrial of plaintiffs' cause of action for damages for libel; in all other respects it is affirmed; appellants to recover costs of appeal.

Cobey, Acting P. J., and Moss, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 5, 1968.