Filed 6/3/14  Marsh v. Anesthesia Services Medical Group CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| M. LOU MARSH, | D064024 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2007-00082724-CU-BT-CTL) |
| ANESTHESIA SERVICES MEDICAL GROUP, INC., | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed in part, reversed in part.

Rosenberg, Shpall & Associates, David Rosenberg and Amy Lea for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton, Matthew J. Schenck and Douglas R. Clifford for Defendant and Respondent.

After demurrer proceedings, the trial court dismissed all remaining causes of action alleged by plaintiff and appellant M. Lou Marsh (Appellant), in this dispute among

professionals in the business of health care. Appellant is a board certified anesthesiologist licensed to practice medicine in California, who seeks damages against a professional medical corporation with which she was formerly associated, defendant and respondent Anesthesia Service Medical Group, Inc. (ASMG). In her fifth amended complaint (FAC), she claims ASMG, which provides physician services to hospitals and other medical centers in San Diego County, intentionally acted to interfere with her economic interests, by making defamatory statements about her medical practice and character that resulted in loss of her business opportunities.

This court previously resolved a prior appeal in this action, *Marsh v. Anesthesia Services Medical Group* (2011) 200 Cal.App.4th 480 (*Marsh* or our prior opinion). In that published opinion dealing with the third amended complaint (TAC), we upheld rulings that sustained demurrers to various of her tort and statutory causes of action, without leave to amend. However, we reversed the judgment of dismissal as to ASMG, regarding the trial court's erroneous ruling sustaining the demurrer without leave to amend on her cause of action for intentional interference with prospective economic advantage (IIPEA). (*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1158 (*Korea Supply*).) We directed the trial court to allow her to file an amended pleading against ASMG solely on the IIPEA claim. (*Marsh, supra*, at pp. 505-506.) She was also allowed to reassert a related breach of contract cause of action, which she had dismissed without prejudice in connection with the taking of the prior appeal. That claim was based on ASMG's alleged violations of a nondisparagement clause in her 2004 separation agreement from its employment. (*Ibid.*)

2

Following two more efforts at amendment by Appellant, ASMG again demurred to the FAC's cause of action for IIPEA, primarily contending that she had failed to set forth sufficient facts regarding proximate causation of harm. It also moved to strike her related cause of action for breach of contract, on the grounds that pursuant to a previous settlement agreement, if she could not state a viable accompanying claim, the contract action would be deemed to lack adequate support in the pleading.

In response, Appellant argued her IIPEA claim was well supported, because she alleged that two plastic surgeons who had previously retained her to work with them on cases, Dr. Stewart Kincaid and Dr. Steven Cohen ("the two surgeons," who are not parties to this action), had heard and reacted to ASMG's defamatory statements about her, by making professional decisions that were adverse to her opportunities for any continued employment at a Scripps Hospital outpatient facility, Ximed. According to the FAC, one of the two surgeons stopped using Appellant at Ximed "due to" the defamatory statements he heard from ASMG about her character and practice, which caused him not to want to "rock the boat" and thus damage his own hospital career. Similarly, the other named surgeon stopped using Ximed at all, because the ASMG statements that he heard led him to believe that it presented a hostile environment to Appellant.

The trial court sustained the demurrer without leave to amend, reasoning that Appellant had not pled that the two surgeons actually believed the defamatory statements that ASMG made, and therefore she had not adequately linked the alleged wrongful conduct by ASMG with her inability to work for the two surgeons at Ximed. The trial court also struck the related cause of action for breach of contract for lack of adequate,

3

remaining support in the pleading.  Appellant again appeals, addressing her arguments only to the demurrer ruling.

In the controlling authority, *Korea Supply, supra*, 29 Cal.4th at page 1163, the court observed, "[w]e find no sound reason for requiring that a defendant's wrongful actions must be directed towards the plaintiff seeking to recover for this tort."  Relying on *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 409 (conc. opn. of Mosk, J.) (*Della Penna*), the court stated that the interfering party is liable to the interfered-with party "when the independently tortious means the interfering party uses are independently tortious *only as to a third party*.  Even under these circumstances, the interfered-with party remains an intended (or at least known) victim of the interfering party--albeit one that is indirect rather than direct."  (Italics in original.)  "In fact, '[t]he most numerous of the tortious interference cases are those in which the disruption is caused by an act directed not at the plaintiff, but at a third person.' "  (*Korea Supply, supra*, at p. 1163.)

Moreover, the Supreme Court has viewed the IIPEA tort as " 'considerably more inclusive than actions based on contract or interference with contract, and [it] is thus not dependent on the existence of a valid contract.' "  (*Korea Supply, supra*, 29 Cal.4th 1134, 1157-1158, relying on *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 823, fn. 6, 826-827.)  It is not appropriate to read the FAC too narrowly under that logical and doctrinal approach.

The current dismissal ruling fails to recognize that the cause of action pled in the FAC for IIPEA adequately sets forth the elements of independently tortious wrongful,

4

defamatory conduct that supports a cognizable claim, and this includes the element of proximate causation of identifiable economic injury to the plaintiff that is directly or indirectly attributable to the effect of the defendant's conduct upon third parties. We reverse the judgment of dismissal as to that cause of action only, but affirm the judgment of dismissal on the breach of contract claim, due to the lack of any arguments about it in this appeal.

I

*BACKGROUND OF PLEADINGS ISSUES*

A. Prior Appeal

Appellant alleges essentially the same transactional facts as in her prior appeal, and we need not set them forth here. We follow the same rule that in analyzing the demurrer and motion rulings, "we take the facts properly pleaded to assess whether they may state their causes of action, as matters of law." (*Marsh, supra,* 200 Cal.App.4th at p. 488.)

In our prior opinion, we noted that some elements of this tort were present in the TAC, but others had not been adequately set forth: "As to ASMG, we conclude Appellant has sufficiently alleged the first of the required elements, existence of a previous economic relationship with the two surgeons, with probability of future economic benefit to her. Next, Appellant adequately alleged that ASMG had knowledge of this ongoing economic relationship with the two surgeons, and that the relationship would have probable future economic benefit to her, but ASMG nevertheless engaged in

5

certain 'intentional wrongful acts' designed to disrupt her professional relationships." (*Marsh, supra,* 200 Cal.App.4th at pp. 505-506.)

At the time our prior opinion was issued, the TAC did not adequately incorporate any defamation allegations, which only concerned an alleged breach of the nondisparagement clause in the separation agreement, in the cause of action that had been dismissed without prejudice. We allowed that contract claim to be reasserted, and leave to amend was required to allow Appellant to present additional allegations about the " ' " . . . (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." ' [Citations.]" (*Korea Supply, supra*, 29 Cal.4th 1134, 1153.)

The analysis in our prior opinion added that the alleged acts of defamation or disparagement by ASMG, about Appellant, "could legitimately be considered to meet, for pleadings purposes, the standards for establishing 'independent wrongfulness' of interference, as enunciated in *Korea Supply, supra,* 29 Cal.4th 1134, 1159, if properly incorporated into the TAC cause of action. Common law defamation claims are subject to 'determinable legal standard[s]' for resolution, as required for such a tort claim." (*Marsh, supra*, 200 Cal.App.4th at p. 505.)

In our prior opinion, we declined to discuss any policy issues concerning whether Appellant had some kind of right to pursue a particular business model of a solo practitioner, compared to a group practice such as ASMG. Another unresolved issue on the status of the pleading was whether the parties would further pursue any privilege

6

issues under Civil Code section 47, which had not been fully briefed or litigated. We expressed no opinion on them. (*Marsh, supra*, 200 Cal.App.4th at p. 506.)

We accordingly noted in the prior opinion that we were unable to determine at that time whether "Appellant will be unable to adequately allege proximate causation of economic harm to her from wrongful acts of ASMG. The disruption in her practice that she attributes to their acts may well have been caused by other factors, but it is not yet before the courts whether there is a causal relationship between ASMG's allegedly wrongful acts and Appellant's harm." (*Marsh, supra*, 200 Cal.App.4th at p. 506.) We concluded, "[T]he trial court should have allowed Appellant an opportunity to file an amended pleading to state her best case on this [IIPEA] theory." (*Ibid.*)

### B. Content of FAC

As before, Appellant's FAC alleges that she previously provided anesthesia services to the two surgeons when they performed procedures at outpatient surgery centers affiliated with various hospitals in the area. In 2006, she decided to resume practicing at Scripps hospital facilities, including Ximed, by taking cases there with the two surgeons.

Appellant continues to allege that ASMG participated in the enactment of new hospital staffing rules that imposed unfair burdens upon her in particular. Such rules required all staff to participate in regular night and weekend hospital call duty, which she felt would jeopardize her health. Other new utilization and staff rules required anesthesiologists practicing at Scripps to attend a minimum number of monthly meetings,

7

and to participate in at least 20 surgical cases over a two-year period, which she found unduly onerous.

In response to her efforts to manage her own practice, ASMG allegedly took actions to limit her practice at Ximed in several wrongful and defamatory ways. In the FAC, the cause of action for damages for IIPEA now asserts that ASMG's underlying wrongful acts consisted of publicizing its defamatory statements about Appellant and her ability to practice, to colleagues in the surgery and hospital fields, with wrongful intent to interfere with her business opportunities. The FAC gives 13 specific examples of statements ASMG made to other surgeons, hospital staff (nurses), hospital personnel and administrators, as well as Appellant's patients and the general public. Such statements included knowingly false misrepresentations to interested parties that her employment status was "retired," that she did not carry her fair share of call, that this adversely affected hospital morale, and that she was disruptive, adversarial, and should be avoided.

The FAC differs from previous versions of Appellant's pleadings primarily with regard to the causation allegations. In the TAC and the fourth amended complaint (for which leave to amend was allowed), she generally alleged that she suffered harm as a result of the statements made by ASMG, which intimidated other doctors and resulted in her inability to perform any anesthesia services at the request of surgeons, and this was a substantial factor in causing her harm. Appellant now more specifically pleads that when ASMG made those defamatory and disparaging comments about her to the two surgeons that she wished to work with, and to others, this was intimidating conduct which caused these two surgeons to react by deciding not to hire her at Ximed (Dr. Kincaid), or not to

8

use Ximed at all (Dr. Cohen). Thus, "Defendant's conduct of making defamatory statements and creating a hostile work environment effectively caused Dr. Marsh to suffer damages by not being able to practice with [the two surgeons] at Ximed."

## C. Subject Ruling

In its order, the trial court acknowledged that Appellant had adequately alleged, through the defamation claims, the independently wrongful acts necessary to support an IIPEA claim. Other preliminary IIPEA elements were also sufficient. However, the trial court concluded that Appellant had failed to sufficiently allege damage to her existing relationships with the two surgeons, that was caused by the independently wrongful conduct. The trial court found lacking any facts sufficiently linking the alleged wrongful conduct (independently false statements) with Appellant's inability to work for the two surgeons at that facility, because Appellant did not and could not allege that those two surgeons believed the defamatory statements. The court noted that to the contrary, the pleading alleged the two surgeons continued to believe Appellant was competent and they wanted to continue using her services.

The trial court concluded, "[i]t is thus not the falsity of ASMG's statements that has damaged Marsh, and she cannot rely on the abstract existence of defamatory statements in the workplace" to allege economic harm in the form of lost work from Dr. Kincaid. Likewise, the trial court ruled that Dr. Cohen's decision to stop using the Ximed facility at all, as he found it to be a hostile environment with respect to Appellant, could not be attributed to his belief in any defamatory statements about Appellant. The mere existence of such a "hostile attitude and environment" arguably did not qualify as an

9

independently wrongful act for purposes of stating this cause of action (citing *Korea Supply, supra*, 29 Cal.4th at p. 1159).

Next, the trial court ruled that although Appellant had permissibly reasserted her cause of action for breach of contract in the FAC (nondisparagement clause in separation agreement), the motion to strike this claim would be granted. The court reasoned that it had been determined in earlier motion proceedings that the parties' partial settlement and release agreement anticipated that such a contract claim could not survive without an accompanying, meritorious tort theory (here, IIPEA). Without such survival of the IIPEA cause of action, the motion to strike was granted. This appeal followed.

II

*SCOPE OF ISSUES PROPERLY PRESERVED ON APPEAL*

On appeal, the parties have not discussed the portion of the ruling striking Appellant's contract claim, based in part on the trial court's interpretation of the previous settlement agreement. We cannot determine from the briefs whether they believe the contract claim stands or falls with the tort claim, or whether Appellant does not choose to pursue it.

" 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) "We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also *Associated*

10

*Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2.)

Under those standards, we conclude that any claims about the viability of these contract claims have been waived. In any case, Appellant has amended the FAC to incorporate those defamation allegations that had been previously omitted from the TAC, to cure the pleading problem noted in our prior opinion. Thus, the two causes of action are no longer integrally related, and we are now required to consider only the validity of the ruling on demurrer to the FAC, regarding the IIPEA allegations. In doing so, we are not required to consider only the specific reasoning of the trial court, but examine whether the allegations state a cause of action under any legal theory. (See *Grinzi v. San Diego Hospice Corporation* (2004) 120 Cal.App.4th 72, 85.)

The trial court did not reach the privilege issues argued by ASMG as an alternative ground of demurrer, i.e., that the allegedly defamatory communications it made were qualifiedly privileged, as made between interested parties. (Civ. Code, § 47, subd. (c).) The parties have briefed that issue on appeal. We need not discuss it, because the authorities on proximate cause in this tort context are sufficient to resolve the case at the pleadings stage.

III

*PRELIMINARY ELEMENTS OF IIPEA: ADEQUATELY PLED*

A. Elements of Probability of Future Economic Benefit; Interference

We apply the same authorities as discussed in our prior opinion, spelling out the elements of a cause of action for IIPEA. The first three of five elements are usually

11

stated as follows, and they seem to include some causation considerations in terms of a probability requirement: " ' "(1) an economic relationship between the plaintiff and some third party, *with the probability of future economic benefit to the plaintiff*; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship." ' " (*Korea Supply, supra*, 29 Cal.4th 1134, 1153; italics added.)

In *Marsh*, we relied on statements in *Korea Supply, supra*, 29 Cal.4th at page 1159, as clarifying that "the third element of the tort of interference with prospective economic advantage 'also requires a plaintiff to plead intentional wrongful acts on the part of the defendant designed to disrupt the relationship.' [Citation.] Whether an act is independently wrongful depends on its unlawfulness (if it is 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard')." (*Marsh, supra,* 200 Cal.App.4th at p. 504.)

In *Korea Supply, supra*, 29 Cal.4th 1134, 1153-1157, the court concluded an IIPEA plaintiff must plead not only that the defendant intentionally committed an act that is independently wrongful (i.e., unlawful under determinable legal standards), but also that the defendant knew that the interference was "certain or substantially certain" to occur as a result of its action. The Supreme Court upheld a previous ruling that Korea Supply's complaint adequately stated the element of direct causation of economic loss by the tortious acts of the defendant, because the defendant allegedly knew that its interference with the plaintiff's reasonably anticipated commission was certain or substantially certain to occur. (*Id.* at pp. 1164-1165.)

### B. Element of Proximate Causation and Definitions

The last two of five elements require an IIPEA plaintiff to state sufficient facts of " ' "(4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." ' [Citations.]" (*Korea Supply, supra*, 29 Cal.4th at p. 1153.) In that case, the majority stated that the proximate cause requirement in a cause of action for IIPEA will prevent a plaintiff from recovering for harm that is too remotely connected to a defendant's wrongful conduct. (*Id.* at pp. 1165-1166.)

Even so, a defendant's wrongful actions need not be directed towards the plaintiff who is claiming IIPEA. Rather, "[t]he interfering party is liable to the interfered-with party 'when the independently tortious means the interfering party uses are independently tortious only as to a third party . . . the interfered-with party remains an intended (or at least known) victim of the interfering party-albeit one that is indirect rather than direct.' " (*Korea Supply, supra*, 29 Cal.4th at p. 1163; italics omitted.)

Proximate causation issues are not discussed in detail by the *Korea Supply* majority opinion, as the dissenting opinion points out. (*Korea Supply, supra*, 29 Cal.4th at pp. 1175-1176 (conc. & dis. opn. of Chin, J.).) This dissenting opinion outlines basic principles of proximate cause, as being " ' "ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." ' [Citation.]" (*Ibid.*, citing *PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315-316 (*PPG Industries*).) The dissent would thus have declined to recognize an IIPEA cause of action for plaintiffs who "allege

13

only remote, indirect, and derivative injury." (*Korea Supply, supra*, at p. 1186 (conc. & dis. opn. of Chin, J.).)

Further, this dissent says, and the majority opinion does not disagree, that proximate cause determinations involve public policy limitations to be imposed upon liability, and those limitations are decided as questions of law. (*Korea Supply, supra*, 29 Cal.4th at p. 1186 (conc. & dis. opn. of Chin, J.).)

The proximate causation doctrine has mainly been developed in the field of negligence. By way of summary, the commentators in 6 Witkin, Summary of California Law (10th ed. 2005) Torts, sections 1184 and 1185, pages 551 to 553, explain that in negligence cases, proximate cause is generally held to be a question of fact, regarding cause in fact and legal cause. However, where the facts are undisputed, the courts may decide the legal cause issue as a matter of law, based on important policy concerns about limitations on the scope of liability. (*PPG Industries, supra*, 20 Cal.4th 310, 315-316.)

The proximate cause element of the IIPEA tort should be interpreted by incorporating the probability-related concerns of the other established elements, including whether the plaintiff pleaded "probable" future economic benefit, and that the defendant committed intentionally wrongful acts that were "substantially certain" to disrupt the relationship. Such intentional disruptions by the defendant must be alleged to have resulted in economic harm to the plaintiff, both as causes in fact and legal causes.

14

IV

*DEFAMATION AS UNDERLYING WRONGFUL ACT*

Appellant has alleged the defamatory statements by ASMG, communicated throughout the relevant medical community, amounted to actionable underlying wrongful acts that support her cause of action for IIPEA. She does not allege a separate defamation claim, and was not required to do so. ASMG continues to dispute whether its statements were merely nonactionable opinion or speculation.

We are required to consider whether Appellant has sufficiently pled that ASMG's statements had a causative effect upon the third party surgeons, Doctors Kincaid and Cohen, at the time they chose not to afford Appellant her desired employment opportunities at Ximed, leading to her economic injury. We next set forth legal standards about the potential effect of alleged defamatory statements, including any reliance on the truth of the statements.

A. Predicate Intentional Act of Defamation

We have previously concluded that as a matter of law, defamation may amount to the independently wrongful act element of the IIPEA cause of action, if it is adequately pled. (*Marsh, supra,* 200 Cal.App.4th at pp. 504-506.) Statutorily, "Slander is a false and unprivileged publication, orally uttered . . . , which: [¶] (3.) *Tends directly to injure* [one] in respect to [one's] office, profession, trade or business, either by imputing . . . general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to [the] office, profession, trade, or business that has a natural tendency to lessen its profits [¶] . . . [¶] or (5.) *Which, by*

15

*natural consequence, causes actual damage*."  (Civ. Code, §§ 46, italics added; 44 [defines defamation as occurring by libel or slander].)

"Defamation is an invasion of the interest in reputation.  The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage.  [Citations.]  Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made.  Publication need not be to the 'public' at large; communication to a single individual is sufficient."  (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645.)

" 'The code definition of libel [or slander] is very broad and has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation.' "  (*Maidman v. Jewish Publications, Inc.* (1960) 54 Cal.2d 643, 649.)  " '[I]t makes no difference what the nature of the employment is, provided it is lawful, or whether the conduct imputed is such as in itself the law will blame or not, *provided it is inconsistent with the due fulfillment of what the party, in virtue of his employment or office, has undertaken*.' "  (*Maidman, supra*, at pp. 650-651; italics in original.)

In *Maidman,* the defendant publication included some true and factual statements about the plaintiff's professional conduct, but it then added editorial comments, opinions and criticisms that were defamatory and unprivileged.  (*Maidman, supra,* 54 Cal.2d at p. 649.)  That was enough to state a cause of action for libel per se.  (*Ibid.*)

16

## B. Innuendo Issues

In its respondent's brief, ASMG goes through 13 allegedly defamatory statements and points out the ones that it thinks are opinion, or speculation, or simple fact. ASMG's arguments in this respect are answered by well-established concepts in defamation law, inducement and innuendo. A defamation cause of action must set forth, in addition to the publication, any extrinsic circumstances showing that it was understood in its defamatory sense (to support the innuendo), where the publications could be viewed as ambiguous in nature. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleadings, § 735, pp. 156-157.) The plaintiff must then allege the statements had a defamatory meaning. (*Ibid.*)

*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 546 holds that defamation allegations are analyzed as presenting questions of law about whether the publication could reasonably have been understood to make charges that injure the plaintiff in his or her professional reputation. "The fact that an implied defamatory charge or insinuation leaves room for an innocent interpretation as well does not establish that the defamatory meaning does not appear from the language itself. The language used may give rise to conflicting inferences as to the meaning intended, but when it is addressed to the public at large, it is reasonable to assume that at least some of the readers will take it in its defamatory sense." (*Id.* at p. 549.)

Likewise, where a statement of opinion implies there are additional, undisclosed defamatory facts that form the basis for the opinion, this statement may lose any protected status. (*Okun v. Superior Court* (1981) 29 Cal.3d 442, 451-452.)

17

In *Smith v. Maldonado, supra*, 72 Cal.App.4th 637, 646-647, the court explained that where a defendant's statements are not defamatory on their face but are capable of a defamatory meaning, through innuendo, "the defendant must demonstrate the truth of the statements in that sense in which the plaintiff's innuendo explains them." (*Id.* at p. 646.) It falls to the defendant to prove true the substance of the charge, or that " 'the imputation is substantially true so as to justify the "gist or sting" of the remark.' " (*Id.* at pp. 646-647.)

In *Patton v. Royal Industries, Inc.* (1968) 263 Cal.App.2d 760, 764 (*Patton*), the defendant failed to meet such a burden, to show that its statements about the reasons that its former employees were terminated were nondefamatory. The former employees, plaintiffs, were highly skilled workmen who left the defendant's employment voluntarily and started up a business of their own. Defendant then sent a letter to at least 72 potential customers for work that its own and plaintiffs' company would be doing, stating that plaintiffs' employment was "terminated," and they were "being replaced with personnel having more experience and knowledge" in the field. (*Ibid.*)

In *Patton, supra*, 263 Cal.App.2d 760, 765-766, the plaintiffs lost at trial on their libel per se claim, but the judgment was reversed on that point. The court said the jury should not have been given an opportunity to decide the libel issue, because the defendant's statements amounted to libel per se on the subject of the plaintiffs' fitness for their occupation: "The letter is susceptible of no interpretation other than as a statement that plaintiffs were discharged. Moreover, the implication that plaintiffs' services had not

18

been first-class or satisfactory was a serious reflection upon their abilities . . . ." (*Id.* at pp. 765-766.)

Here too, the statements by ASMG that Appellant had retired or was somehow unfit for further service must be read in context of the entire pleading, which sets forth enough extrinsic circumstances to illustrate a potentially defamatory meaning, and alleges that she had made efforts to communicate to the medical establishment that she still wanted to work. Even assuming some of the ASMG statements were ambiguous, sufficient facts are pled to set forth a defamatory meaning of ASMG's criticisms of Appellant's professional conduct, when the entire cause of action is read in context. Those statements suffice as the independent wrongful act element of the IIPEA cause of action, which alleges that the defamatory statements about her, within the relevant community, were known by the speakers to be "substantially certain" to adversely affect her economic interests.

V

*PROXIMATE OR LEGAL CAUSE ELEMENT OF IIPEA CLAIM*

ASMG argues, and the trial court agreed, that its comments and publications could not have legally caused the alleged harm to Appellant, for lack of any alleged reliance by the two surgeons who heard the comments, in terms of their belief in their truth. ASMG says the FAC as a whole is inconsistent, because the two surgeons were apparently still willing to retain her for work, possibly elsewhere.

To support this point, ASMG relies on the rule that "[w]here a conclusion is alleged and also the special facts from which the conclusion is drawn, if the special facts

19

are inconsistent with and do not support the conclusion, the former control, and the sufficiency of the complaint is to be determined from the special facts pleaded." (*Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 995; *C & H Foods Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1063.)

### A.  Reliance as Component of Legal Causation

By way of analogy, it is instructive to turn to the treatment of a plaintiff's reliance in comparable cases, such as deceit.  Appellant is not claiming that she or the two surgeons were deceived by ASMG's representations.  If she were claiming a deceit cause of action, she would be required to plead and prove the common law element of actual reliance.  (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1091.)  "*It may be true, as plaintiffs assert, that reliance can be thought of as the mechanism of causation in an action for deceit.* [Citation.]  But to accept that characterization does not excuse plaintiffs from the requirement of pleading reliance, since specific pleading is necessary to 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom."  (*Id.* at p. 1092.)

Nor is Appellant claiming that she or the two surgeons were defrauded by ASMG. If she were alleging fraud, she would have to plead that the defendant's representations amounted to a "substantial factor" in inducing her to act in a particular manner, even if she had also relied upon advice from elsewhere.  (*Wennerholm v. Stanford University School of Medicine* (1942) 20 Cal.2d 713, 717.)  In the context of ordinary fraud, "reliance" on a defendant's fraudulent representations means the plaintiff relied on the statement for its truth and accuracy.  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th

310, 327, fn. 10 [arising in the Unfair Competition Law context, Bus. & Prof. Code, § 17200 et seq.].)  Such actual reliance on a statement is " 'the causal mechanism of fraud.' "  (*Kwikset Corp., supra*, at p. 326.)

This case requires us to consider whether a different kind of "reliance" on a defendant's statements, e.g., by a colleague or employer who is not a defendant, can be thought of as the "mechanism of causation" of IIPEA damages.  This plaintiff is alleging that the effect of such reliance by others on the defamatory statements led directly to her lost economic opportunities.  (See *Mirkin v. Wasserman, supra*, 5 Cal.4th 1082, 1092.)  In this IIPEA context, such reliance does not require acceptance of the truth of statements by any of the recipients, including third parties, but only a discernible response to the statements that causes economic harm to the plaintiff.  The question on pleadings thus becomes whether any false and unprivileged statements made by ASMG to the two surgeons, and to others in the local medical/surgical community, had the "natural consequence" of actually harming Appellant's economic opportunities.  (Civ. Code, § 46, subds. (3), (5).)

B.  Third Party Reliance on Statements:  Case Law

In the context of defamation, the causation questions here are comparable to *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 637-638 (*Pulver*), in which the court examined a demurrer to a cause of action for defamation damages.  Plaintiff Pulver sued defendant, alleging its alleged report to credit reporting agencies regarding plaintiff's failure to pay her sister's debt was defamatory, in light of extrinsic facts that showed the report had a defamatory meaning (i.e., omitted facts that plaintiff

21

was not legally responsible to pay that debt).  The appellate court followed the rule that whether a writing or statement is "reasonably susceptible of a defamatory meaning is a question for the court."  (*Pulver, supra,* at p. 637, citing *MacLeod, supra*, 52 Cal.2d 536, 546.)

In *Pulver,* the appellate court held that even though the alleged content of the [credit] report was "not defamatory on its face, extrinsic facts were pleaded which show its defamatory meaning" (the false report by defendant to the credit reporting agencies that plaintiff had not made payments on her sister's debt, when defendant knew that plaintiff was not responsible for the debt, but made the report falsely and maliciously).  (*Pulver, supra*, 182 Cal.App.3d 622, 638.)

In the context of defamation and IIPEA, this case is comparable to *Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248 (*Overhill*), in which an employer sued its former employees and a community activist, for damages for defamation, IIPEA, and related tort theories.  The defendants had publicly protested and asserted that the plaintiff employer was motivated by racism in making termination decisions about certain employees, based on their immigration or racial status.  On being sued, the defendants brought a special motion to strike, claiming the action was a strategic lawsuit against public participation, or SLAPP.  The trial court denied the motion in part regarding defamation, IIPEA and the tort theories.

On appeal, the court found the order denying the motion to strike was proper.  The claims the employer pursued were all based on defamation, and the employer had showed it would probably prevail in showing that the defendants' factual claims of racially

22

motivated employment termination were provably false. Such factual statements by defendants did not amount to opinion or other protected commentary. (*Overhill, supra,* 190 Cal.App.4th at pp. 1261-1266.) This conclusion supported the defamation, IIPEA and related tort causes of action. (*Id.* at pp. 1266-1268.)

In *Overhill* the appellate court applied the "totality of the circumstances" test to discuss whether the allegedly defamatory statements included or implied provably false assertions of fact that caused injury and were not deserving of constitutional protection. (*Overhill, supra,* 190 Cal.App.4th at p. 1261, citing *Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385 (*Franklin*).) "Whether a challenged statement 'declares or implies a provable false assertion of fact is a question of law for the court to decide . . . . ' " (*Ibid.*; *Overhill, supra*, 190 Cal.App.4th 1248, 1261.) Next, if a statement is susceptible of both an innocent and a libelous meaning, "the jury must decide how the statement was understood." (*Ibid.*)

On the issue of causation of its economic injury, the plaintiff employer in *Overhill* was able to provide evidence that one of its corporate customers (not a party to the case) had reacted to the defendants' public, heated challenges to the employer's decision to terminate certain employees. Almost immediately, that customer had called for an ethics investigation ("audit") concerning the employer's labor practices. However, for causation of harm by defamation, it is not enough to allege that there was a temporal proximity between a given statement or event and the reputational harm suffered by the plaintiff. Instead, the degree of proximity and the likelihood of a cause and effect relationship must also be considered. (*Overhill, supra*, 190 Cal.App.4th 1248, 1267.)

23

The appellate court then determined that an inference of causation could be drawn between the defendants' allegedly defamatory statements about certain employment practices and the employer's reputational damage suffered in that respect. Nothing similar had happened to the employer before, and "that evidence was sufficient to support an inference of causation" of harm, by the defendants' allegedly defamatory statements about the employer's civic character and employment practices. (*Overhill, supra*, 190 Cal.App.4th 1248, 1267.) More than simple closeness in time was alleged to support causation of harm and the employer had shown a probability of prevailing. Thus, the defendants were not entitled to prevail on their anti-SLAPP motion to strike regarding defamation, IIPEA, etc. (Code Civ. Proc., § 425.16, subd. (b)(2).)

## C. Analysis

Even assuming an IIPEA plaintiff has sufficiently alleged the defendant acted with a specific intent to interfere with his or her business expectancy, the plaintiff must still prove any issues of fact about whether the defendant actually had such an intent. (See *Korea Supply, supra*, 29 Cal.4th 1134, 1157, fn. 9; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57.) We do not determine whether Appellant will be able to prove the required proximate causation of economic harm to her from wrongful acts of ASMG. As we said before, "The disruption in her practice that she attributes to its acts may well have been caused by other factors, but it is not yet before the courts whether there is a causal relationship between ASMG's allegedly wrongful acts and Appellant's harm." (*Marsh, supra,* 200 Cal.App.4th at p. 506.)

24

In reviewing the FAC, we can now determine on these pleadings that the alleged ASMG statements were "reasonably susceptible of a defamatory meaning." (*Pulver, supra,* 182 Cal.App.3d at p. 638, citing *MacLeod, supra*, 52 Cal.2d 536, 546 [whether a writing or statement is "reasonably susceptible of a defamatory meaning" is a question for the court].) Also as a matter of law, we can determine that Appellant has pleaded enough facts to support her theory that the disruption of her probable economic benefit was caused " 'by an act directed not at the plaintiff, but at a third person.' " (*Korea Supply, supra*, 29 Cal.4th at pp. 1162-1163.) "If the defendant's improper conduct constitutes independently wrongful behavior, the fact that the plaintiff is an indirect victim does not preclude recovery." (*Ibid.*) Appellant has adequately pleaded that the ASMG publications directly caused the two surgeons, who had previously employed her, to take action that resulted in adverse consequences to her own economic interests, despite her otherwise allegedly adequate professional qualifications. For purposes of pleading, she was indirectly harmed by the fact that ASMG's statements were made and publicized within the relevant medical community, because the two surgeons allegedly avoided Appellant in connection with their work, whether the statements were believed or not.

Moreover, Appellant has successfully alleged that ASMG knew that interference with her economic interests was "certain or substantially certain" to occur as a result of its harmful statements concerning her prospective employment at the desired facility. (Civ. Code, § 46, subds. (3), (5).) More direct causation factors than the existence of a "hostile

25

environment" to Appellant are alleged, under all the relevant circumstances. (*Overhill, supra,* 190 Cal.App.4th at p. 1261.)

Factual issues remain on proof of all allegations. We determine only that, taking all Appellant's allegations as true, she has adequately pleaded that the two surgeons, her colleagues, were caused by the statements of ASMG to take action, and the statements were both a factual and legal cause, direct or indirect, of her claimed economic injury. The trial court erred in finding proximate causation of economic injury was inadequately alleged in this IIPEA case.

## DISPOSITION

The judgment of dismissal is reversed in part with directions to overrule the demurrer to the cause of action for IIPEA, and affirmed in part as to the dismissal of the breach of contract cause of action. Each party shall bear its own costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

McINTYRE, J.

O'ROURKE, J.

26